## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PUTNAM INVESTMENT MANAGEMENT, LLC, | Civil Action No.: |
| Plaintiff, | |
| v. | **COMPLAINT** |
| ACE AMERICAN INSURANCE COMPANY, | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiff Putnam Investment Management, LLC ("Putnam"), by and through its undersigned counsel, files this Complaint against ACE American Insurance Company ("ACE") , a unit of Chubb Ltd., and alleges as follows:

### PRELIMINARY STATEMENT

1.      This is an action for declaratory relief and damages for breach of contract and willful violation of Massachusetts General Laws, Chapter 93A arising out of ACE's repudiation and material breach of its obligations under the ACE Advantage Professional Liability and Corporate Management Protection Policy No. DON G21644365 015 (the "Policy") that ACE sold Putnam.  The Policy provides $10 million in coverage above a $2.5 million self-insured retention (the "Retention").

2.      ACE violated its obligations under the Policy by refusing to deduct covered Defense Costs from the Retention, thereby impermissibly delaying its obligation to indemnify Putnam for those costs.

3.      Putnam has incurred over $4.5 million in Defense Costs in responding to an SEC investigation (the "SEC Action").  ACE has acknowledged that the SEC Action is a covered

Claim, and ACE is therefore bound by the Policy to reimburse Putnam for the Defense Costs related to the SEC Action that exceed the $2.5 million Retention.  Under the Policy, ACE's obligation to reimburse Putnam begins once the Retention is satisfied.  The Policy contains a requirement that ACE reimburse Defense Costs as part of its indemnity obligation, but assigns the right and duty to defend a Claim exclusively to Putnam.  Therefore, the Policy in no way entitles ACE to control the defense of Claims against its insured.

4.      In order to delay the satisfaction of the Retention – and therefore its obligation to reimburse Putnam – ACE has insisted that a significant portion of the SEC Action Defense Costs are excluded from coverage, and therefore do not count towards the Retention.  In an attempt to double its chances of limiting its liability to Putnam for all reasonable and necessary Defense Costs, ACE has improperly relied on two independent Policy provisions.

5.      First, ACE has failed and refused to provide Putnam timely coverage by asserting that any Defense Costs incurred by Putnam before notice  of the SEC Action was provided (the "Pre-Notice Defense Costs") are not covered by the Policy, do not deplete the Retention,  and are solely Putnam's responsibility.  ACE bases its refusal to pay on the Policy's "Notice Provision," but that provision specifically states "if an Insured fails to provide notice as provided in this section IX(A), the Insurer shall not be able to limit, restrict or otherwise avoid coverage unless the Insurer can establish that such failure to comply … actually and materially prejudiced  the Insurer's rights."  ACE has not identified a single way that it was prejudiced, yet has refused to count nearly $1.3 million in paid and incurred Defense Costs towards the depletion of the retention.

6.      Second, ACE has wrongfully denied coverage for the Pre-Notice Defense Costs based on the Policy's provision requiring ACE to provide "prior written consent before defense

costs are incurred, which consent shall not be reasonably withheld." On its face, this provision does not apply to amounts incurred before the Policy is triggered by the satisfaction of the $2.5 million retention. Nonetheless, as ACE was not actually and materially prejudiced by the timing of Putnam's notice, the Pre-Notice Defense Costs are covered by the Policy regardless of terms of this provision. Moreover, ACE has never identified a single Pre-Notice Defense Cost it deems to have been unnecessary, excessive, or to embody any quality that would justify ACE's reasonable refusal to consent to those costs. Instead, ACE issued a blanket denial of coverage for all Pre-Notice Defense Costs without any investigation into their reasonableness.

7.      Under the terms of the Policy, ACE may only disclaim liability for otherwise covered Defense Costs if such costs are: (a) unreasonable; or (b) incurred without prior notice to ACE *and* ACE was actually and materially prejudiced by receiving "late" notice. ACE was not prejudiced by delayed notice, nor has ACE identified a single Pre-Notice Defense Cost as unreasonable, such that ACE could justifiably withhold consent. Therefore, by relying on the Notice Provision and/or the Consent Provision as a basis to disclaim coverage for the Pre-Notice Defense Costs, and by excluding such costs from the Retention, ACE has materially breached its obligations under the Policy. ACE's actions constitute "unfair claims settlement practices" and clear violations of Massachusetts General Laws, Chapter 176D § 3(9), and thereby constitute violations of Massachusetts General Laws, Chapter 93A.

8.      ACE has further breached its obligations be seeking to commandeer control of the defense of the SEC Action. ACE has ostensibly required Putnam—to whom the Policy assigns the sole right and responsibility to defend a Claim—to abide by ACE's Litigation Management Guidelines (the "Guidelines") by improperly using the Guidelines as a proxy for a reasonableness determination, and denying coverage (i.e. refusing to provide consent) for any line item that ACE

3

believes does not conform to its Guidelines and the restrictions therein.  The Guidelines are not part of the Policy, and were never provided to Putnam at the time of contracting.  The Guidelines are inconsistent with the Policy's mandate that Putnam control its own defense, and operate to materially and significantly reduce the coverage that Putnam believed it had purchased.  The Guidelines therefore conflict with the Policy and represent a unilaterally imposed, after-the-fact limitation on what Defense Costs ACE will cover.

9.      ACE's attempt to limit its liability by belatedly imposing Guidelines that were not part of the Policy – and to which Putnam did not consent – constitutes a material breach of its obligations under the Policy and violations of M.G.L. c. 176D and M.G.L. c. 93A.

10.      In November 2018, with the SEC Action claim pending, Chubb presented Putnam with a renewal policy (the "Renewal Policy") that included a marked increase in both the required premium and the self-insured Retention.  Prior to the Renewal Policy negotiations, Chubb had issued a coverage letter identifying the Pre-Notice Defense Costs as one of the "*Potential* Coverage Issues" in the SEC Action (emphasis added).  During the Renewal Policy negotiations, ACE failed to adequately disclose that it intended to unequivocally deny coverage for the Pre-Notice Defense Costs.

11.      Putnam relied to its detriment on the express Policy language requiring ACE to provide coverage for the SEC Action during the Renewal Policy negotiations, and ultimately renewed its coverage with ACE.  If ACE had adequately revealed to Putnam that it had no intention of honoring its Policy obligations by providing coverage for the SEC Action Defense Costs, Putnam would not have purchased the Renewal Policy or would have done so on different terms.

12.     As a result of ACE's refusal to honor its Policy obligations, bad faith attempts to limit its own liability, and misrepresentations intended to induce Putnam to purchase the Renewal Policy,  Putnam now seeks a declaration as to the existence, scope and breach of ACE's obligation to pay Putnam's Defense Costs arising out of the covered SEC Action, and damages for ACE's breach of contract and for all available relief resulting from ACE's violations of M.G.L. c.176D and M.G.L. c. 93A.

## THE PARTIES

13.     Plaintiff Putnam Investment Management, LLC, a Delaware limited liability company, is the wholly-owned subsidiary of Putnam U.S. Holdings I, LLC, which in turn is the wholly-owned subsidiary of Putnam Acquisition Financing LLC.  Putnam Acquisition Financing LLC is the wholly-owned subsidiary of Putnam Acquisition Financing Inc., a Colorado corporation with its principal place of business in Massachusetts.  Putnam is therefore a citizen of both Colorado and Massachusetts.

14.     Upon information and belief, Defendant ACE American Insurance Company is incorporated in Pennsylvania with its principal place of business in Pennsylvania.  Upon information and belief, at all material times ACE has conducted substantial business within the State of Massachusetts, including engaging in the business of selling insurance, investigating claims, and/or issuing policies that cover policyholders or activities located in Massachusetts.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties to this action and because the amount in controversy exceeds $75,000, exclusive of interest and costs.

16.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391.

## **FACTUAL ALLEGATIONS**

**I.      PUTNAM'S PROFESSIONAL LIABILITY AND CORPORATE MANAGEMENT PROTECTION INSURANCE COVERAGE**

17.      In consideration of the payment of substantial premiums, ACE issued the ACE Advantage Professional Liability and Corporate Management Protection Policy No. DON G21644365 015 (the "Policy") to Putnam Investments, LLC for the policy period December 1, 2016 to December 1, 2017 (the "Policy Period"). The Policy includes  Investment Advisor Liability Coverage (the "IA Coverage").  The Policy has a limit of liability of $10,000,000 above a $2,500,000 retention (the "Retention") per Claim, as defined in the Policy.

18.      As a subsidiary of Putnam Investments, LLC, Putnam is an Insured under the Policy and is entitled to coverage as an Insured Advisor for all Loss that Putnam becomes legally obligated to pay by reason of a Claim first made against Putnam during the Policy Period.

19.      The Policy's IA Coverage provides that:

> The Insurer shall pay on behalf of the Insured Adviser all Loss for which the Insured Adviser becomes legally obligated to pay by reason of a Claim first made against the Insured Adviser during the Policy Period . . . and reported to the Insurer pursuant to the terms of this Policy, for any Wrongful Acts by the Insured Adviser . . . in rendering or failing to render Professional Services, if such Wrongful Acts take place prior to the end of the Policy Period.

*See* Policy § I(B).

20.      Putnam is an Insured Advisor under the terms of the Policy.

21.      "Loss" is defined to include "Defense Costs which the Insured becomes legally obligated to pay on account of any Claim first made against any Insured during the Policy Period . . . for Wrongful Acts to which this Policy applies."  *See* Policy at § II(CC).

22.     "Defense Costs" are "reasonable and necessary costs, charges, fees and expenses

incurred by any Insured in investigating, adjusting, defending or appealing Claims . . . ." *See*

Policy at § II(L).

23.     "Claim" is defined in the Policy as:

> 1.     a written demand for monetary or non-monetary, injunctive
>         or other relief;
>
>                              ***
>
> 3.     a civil, criminal, administrative or regulatory investigation
>         commenced by the service upon or other receipt by any
>         Insured of a written notice or subpoena, formal
>         investigative order, Wells Notice, civil investigative
>         demand, or target letter within the meaning of Title 9,
>         Section 11.151 of the United States Attorneys' Manual . . . .

*See* Policy at § II(E).

24.     "Wrongful Act" is defined in the Policy, in relevant part, to mean "any error,

misstatement, misleading statement, act, omission, neglect, or breach of duty . . . actually or

allegedly committed or attempted by . . . the Insured Adviser." *See* Policy § II(TT).

25.     "Professional Services" is defined to include:

> giving financial, economic or investment advice, including
> performing investment management services, regarding
> investments, if such advice or services are provided by or on behalf
> of the Insured Adviser . . . (i) in return for a fee, commission or
> other compensation ("Compensation"), or for which Compensation
> . . . has been waived by the Insured Adviser; or, (ii) without
> Compensation as long as such non-compensated services are
> rendered in conjunction with services rendered for Compensation

*See* Policy at § II(MM).

26.     The Policy requires the insurer's consent "to . . . incur any Defense Costs or

otherwise assume any contractual obligation or admit any liability with respect to any Claim"

such that ACE "shall not be liable for any settlement, Defense Costs, assumed obligation or

admission to which it has not consented." *See* Policy at § X(B) (the "Consent Provision").  The

Consent Provision prohibits ACE from "unreasonably" withholding consent.  The Consent

Provision does not apply to Defense Costs not exceeding Putnam's retention.  *See id*.

27.     Under the Policy, Putnam is required to provide ACE with  "written notice of any

Claim made against the Insureds as soon as practicable after the general counsel or treasurer of

the Named Insured, or in the case of an Insured Mutual Fund, the Chairman, first learn(s) of the

Claim . . . ."  *See* Policy at § IX(A) ("Notice Provision").  The Notice Provision contains an

exception, which provides "that if an Insured fails to provide notice as provided in this Section

IX(A), the Insurer shall not be able to limit, restrict or otherwise avoid coverage unless the Insurer

can establish that such failure to comply with this Section IX(A) actually and materially

prejudiced the Insurer's rights."  *See* Policy at § IX(A).

28.     Should a Claim arise under the Policy, the Policy provides that "[i]t shall be the

duty of the Insureds and not the duty of the Insurer to defend any Claim."  *See* Policy at § X(A).

## II.     THE SEC ORDER AND PUTNAM'S SUBSEQUENT CLAIM FOR COVERAGE

29.     On March 1, 2017, the U.S. Securities and Exchange Commission issued to

Putnam an Order Directing Private Investigation (the "SEC Order"), alleging suspected violations

of the "Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act and Rule 10b-5

thereunder, Sections 203, 206(1), 206(2), 206(3) and 206(4) of the Advisers Act and Rules

206(4)-7 and 206(4)-8 thereunder, and Sections 17(a)(1) and 17(a)(2) of the Investment Company

Act."

30.     After receiving the SEC Order, Putnam directed its counsel, Skadden, Arps, Slate,

Meagher & Flom, to defend Putnam's interests for the duration of the SEC's investigation (the

"SEC Action").

31.     On August 24, 2017, Putnam's insurance broker, Marsh USA, Inc., sent written

notice to ACE of Putnam's receipt of the SEC Order and the subsequent SEC Action.  While

8

awaiting ACE's response, Putnam continued to defend against the SEC Action – as was Putnam's right under the Policy – and operated under the presumption that ACE would fully reimburse all Defense Costs above the Retention – as was ACE's obligation under the Policy.

32.     On September 27, 2017, ACE issued its coverage position (the "Coverage Letter"). In the Coverage Letter, ACE acknowledged that Putnam is entitled to coverage under the Policy for the SEC Action and consented to Putnam's retention of Skadden as counsel, but nonetheless disclaimed coverage for the approximately $1,300,000 in Defense Costs incurred prior to August 24, 2017 (the "Pre-Notice Defense Costs").  Referencing Putnam's delayed notice, ACE insisted that under the terms of the Policy, "ACE is not liable for any Defense Costs to which it has not consented," and identified the SEC Action Pre-Notice Defense Costs as one of several "Potential Coverage Issues."   ACE subsequently refused to either reimburse Putnam's Pre-Notice Defense Costs or to count those costs towards the Retention.

33.     Putnam has incurred over $4.5 million in Defense Costs arising out of the SEC Action.

34.     Putnam has incurred approximately $2 million in excess of the Retention that, under the Policy, ACE is obligated to reimburse.

35.     Relying on the Notice Provision and/or the Consent Provision, ACE has refused to count approximately $1.3 million of the Defense Costs towards the retention.

36.     Relying on the unilaterally imposed Litigation Management Guidelines, ACE has thus far refused to recognize or provide coverage for approximately $200,000 in Defense Costs.

A.    **ACE Improperly Relied on the Notice Provision to**
**Deny Coverage for the Pre-Notice Defense Costs**

37.    Under the terms of the Policy, all reasonable and necessary Defense Costs incurred

in the defense of a covered Claim must be counted toward the Retention, until the Retention is

satisfied.

38.    ACE may not disclaim coverage for any failure by Putnam to comply with the

Notice Provision "unless [ACE] can establish that such failure to comply with [the Notice

Provision] actually and materially prejudiced [ACE]'s rights."

39.    ACE has never asserted that it was actually and materially prejudiced by Putnam's

incurring of the Pre-Notice Defense Costs, and in fact cannot establish such prejudice.

40.    The entirety of the Pre-Notice Defense Costs fell within the Retention, and would

have been Putnam's responsibility *regardless* of when ACE was provided with notice.  By the

explicit terms of the Policy, ACE's consent is not required for Defense Costs unless or until the

Retention is satisfied.

41.    The Policy explicitly states that it is "the duty of the Insureds and not the duty of

the Insurer to defend any Claim."  ACE drafted the Policy such that the right to conduct the

defense of a Claim rests solely with Putnam, and such that ACE's rights and duties with respect to

the defense are limited to reimbursement of reasonable and necessary Defense Costs.  The Policy

in no way entitles ACE to exert any control over the defense beyond ACE's right to reasonably

refuse to consent to incurred Defense Costs.

42.    Pursuant to the Policy that ACE drafted, Putnam – not ACE – has the right to

select counsel and to make all strategic and tactical decisions regarding the defense of the Claim.

ACE therefore cannot establish prejudice on these grounds.

43.     ACE cannot establish, and has not claimed to have suffered, any actual or material prejudice as a result of receiving notice of the SEC action in August of 2017.  ACE's reliance on the Notice Provision to deny coverage for the Pre-Notice Defense Costs is a material breach of its obligations under the Policy and constitutes violations of M.G.L. c. 176D and M.G.L. c. 93A.

**B.      ACE Improperly Relied on the Consent Provision to
         Deny Coverage for the Pre-Notice Defense Costs**

44.     Pursuant to the Consent Provision in the Policy, coverage for Defense Costs within the Retention is not subject to ACE's consent.  After the Retention is satisfied, ACE may only withhold consent where doing so is not unreasonable.

45.     ACE has incorrectly required consent with respect to Defense Costs within the Retention.  Further, ACE has never asserted that any of the Pre-Notice Defense Costs are unnecessary, excessive, or embody any quality that would justify ACE's reasonable refusal to consent to those costs.

46.     ACE's blanket denial of coverage for the Pre-Notice Defense Costs without any attempt to determine the reasonableness of those costs,  is an improper application of the Consent Provision, a breach of ACE's obligations under the Policy, and constitutes violations of M.G.L. c. 176D and M.G.L. c. 93A.

47.     Under the terms of the Policy, ACE may not unreasonably withhold consent with respect to coverage of the Pre-Notice Defense Costs.  All reasonable and necessary Defense Costs incurred in the defense of a covered Claim must be counted toward the Retention, until the Retention is satisfied.

### C.   ACE Improperly Imposed and Relied on the Litigation Management Guidelines to Deny Coverage

48.     In the Coverage Letter, ACE stated that its consent to Skadden as Putnam's counsel was "subject to the firm's compliance with [ACE's] Litigation Management Guidelines" (the "Guidelines).

49.     The Policy explicitly states that it is "the duty of the Insureds and not the duty of the Insurer to defend any Claim."  By assigning the duty to defend to Putnam, ACE limited its obligation only to the reimbursement of Defense Costs.  Putnam had and exercised its right to select counsel and to make all strategic and tactical decisions regarding the defense of the SEC Claim.

50.     ACE did not assign itself the right to select counsel, and Putnam's retention of Skadden is permissible irrespective of ACE's consent.  ACE conditioning its consent of Skadden's retention upon compliance with the Guidelines is inconsistent with the terms of the Policy and a material breach of contract.

51.     The Policy provides coverage for reasonable and necessary Defense Costs and allows ACE to withhold consent only where such withholding would not be unreasonable.

52.     The Guidelines impose additional restrictions on Putnam's incurring of Defense Costs beyond the limitations included in the Policy.

53.     The Guidelines were never part of the Policy.

54.     Putnam was not provided with a copy of the Guidelines at the time of contracting.

55.     Putnam has not agreed to abide by the Guidelines or to accept the Guidelines as a proxy for determining whether any specific incurred Defense Cost is reasonable.

56.     Putnam is not bound by the Guidelines.

57.     ACE's attempt to use the Guidelines to limit coverage otherwise available to Putnam under the terms of the Policy is a breach of ACE's Policy obligations and constitutes violations of M.G.L. c. 176D and M.G.L. c. 93A.

## III.    PUTNAM'S PURCHASE OF THE RENEWAL POLICY

58.     While the SEC Action claim was pending, the policy period for the 2018 ACE policy was coming to a close and ACE presented Putnam with the Renewal Policy.

59.     The Renewal Policy contained a significant increase in the price of the premium, as well as a much higher self-insured retention.  Compared to the previous policies, including the Policy, the Renewal Policy essentially offered less coverage for a higher price.

60.     Prior to the Renewal Policy negotiations, Chubb, in its Coverage Letter, identified the Pre-Notice Defense Costs as one of the "*Potential* Coverage Issues" in the SEC Action (emphasis added).  During the Renewal Policy negotiations, ACE failed to adequately disclose that it intended to unequivocally deny coverage for the Pre-Notice Defense Costs.

61.     Upon information and belief, ACE's presentation of the Renewal Policy was intended to lead Putnam to believe that if Putnam purchased this policy with less favorable terms, ACE would drop its "Potential Coverage Issues" and properly reimburse Putnam for the SEC Action Defense Costs.  Putnam relied on ACE's representation and the express Policy language to its detriment, and was induced by ACE to purchase the Renewal Policy based on this belief.

62.     Had ACE adequately revealed during the Renewal Policy negotiations that it had no intention of counting the Pre-Notice Defense Costs toward the Retention, and no intention of fully reimbursing Putnam for those Defense Costs above the Retention, Putnam would not have renewed the Policy or would have done so on different terms.

63.     ACE's inducement of Putnam to purchase the Renewal Policy under false pretenses is a violation of M.G.L. c. 176D and M.G.L. c. 93A.

13

## FIRST CLAIM FOR RELIEF
### Declaratory Relief as to ACE's Obligations Under the Policy

64.     Putnam repeats and realleges the allegations set forth in paragraphs 1 through 63 of this Complaint as if fully set forth herein.

65.     Pursuant to the terms of the Policies, ACE is obligated to pay, up to the limits of liability, for a Claim that satisfies the insuring agreements of the Policies and is not otherwise excluded from coverage.

66.     As detailed above, the facts of the SEC Action come within the insuring agreements of the Policy.  The allegations in the SEC Order involve Putnam's Professional Services as defined in the Policy, and the SEC Order was served on Putnam during the Policy Period.  The SEC Order and subsequent SEC Action constitute a covered Claim and this Claim is not otherwise excluded by the Policy.  ACE conceded as much in its Coverage Letter.

67.     The Policy obligates ACE to pay, as part of its indemnity obligation, all Defense Costs, including all "reasonable and necessary costs, charges, fees and expenses incurred by [Putnam] in investigating, adjusting, defending or appealing Claims."  This obligation pre-dates first notice, unless ACE can demonstrate actual and material prejudice – a standard that ACE has not, and cannot, satisfy.

68.     ACE's consent was not required for Putnam to incur the Pre-Notice Defense Costs. All of the Pre-Notice Defense Costs fell within the Retention, and the Policy does not require ACE's consent for Defense Costs until the Retention is satisfied.

69.     ACE disputes its legal obligation to pay the Defenses Costs arising out of the covered SEC Action.

70.     Pursuant to 28 U.S.C. § 2201, Putnam is entitled to a declaration by this Court of ACE's obligations under the Policy.

71.     An actionable and justiciable controversy exists between Putnam and ACE concerning the proper construction of the Policies, and the rights and obligations of the parties thereto, with respect to the Claim for coverage for Defense Costs arising out of the SEC Action.

72.     Pursuant to 28 U.S.C. § 2201, this Court should enter a declaratory judgment in favor of Putnam and against ACE, declaring that there is coverage available for Putnam's Claim under the Policies, and, pursuant to 28 U.S.C. § 2202, any other relief this Court deems proper. Such a declaration would substantially resolve the current controversy between Putnam and ACE.

**SECOND CLAIM FOR RELIEF**
**Declaratory Relief as to the Inapplicability of ACE's Litigation Management Guidelines**

73.     Putnam repeats and realleges the allegations set forth in paragraphs 1 through 72 of this Complaint as if fully set forth herein.

74.     Pursuant to the terms of the Policy, ACE is obligated to pay, up to the limits of liability, for a Claim that satisfies the insuring agreements of the Policy and is not otherwise excluded from coverage.

75.     As detailed above, the facts of the SEC Action come within the insuring agreements of the Policy.  The allegations in the SEC Order involve Putnam's Professional Services as defined in the Policy, and the SEC Order was served on Putnam during the Policy Period.  The SEC Order and the subsequent SEC Action, constitute a covered Claim and this Claim is not otherwise excluded by the Policy.

76.     The Policy obligates ACE to pay all Defense Costs, including all "reasonable and necessary costs, charges, fees and expenses incurred by [Putnam] in investigating, adjusting, defending or appealing Claims."

77.     ACE disputes its legal obligation to pay any of Putnam's Defense Costs arising out of the covered SEC Action that ACE believes are inconsistent with its Guidelines.

15

78.     ACE relies solely on its unilaterally imposed Litigation Management Guidelines as a basis for denying coverage for certain Defense Costs, though these Guidelines are not part of the Policy, and were not provided to Putnam at the time of contracting.

79.     Putnam never agreed to abide by the terms of the Litigation Management Guidelines.

80.     Pursuant to 28 U.S.C. § 2201, Putnam is entitled to a declaration by this Court of the validity of the Litigation Management Guidelines.

81.     An actionable and justiciable controversy exists between Putnam and ACE concerning the applicability of the Litigation Management Guidelines, and whether ACE may rely on the Guidelines to limit its indemnity obligation to Putnam with respect to the Claim for coverage for Defense Costs arising out of the SEC Action.

82.     Pursuant to 28 U.S.C. § 2201, this Court should enter a declaratory judgment in favor of Putnam and against ACE, declaring that the Litigation Management Guidelines are not enforceable as to Putnam, that ACE may not rely on the Litigation Management Guidelines as a basis for denying coverage, and, pursuant to 28 U.S.C. § 2202, any other relief this Court deems proper.

### THIRD CLAIM FOR RELIEF
**Breach of Contract for Failure to Fully Reimburse Putnam for
All Reasonable Defense Costs Incurred with Respect to a Covered Claim**

83.     Putnam repeats and realleges the allegations set forth in paragraphs 1 through 82 of this Complaint as if fully set forth herein.

84.     The Policy constitutes a valid and enforceable contract between Putnam and ACE, and Putnam is an insured under the Policy.

85.     Putnam paid all premiums, provided notice of its Claim during the Policy Period, has cooperated with ACE, and otherwise performed all obligations required of it under the Policies.

86.     As detailed above, the facts of the SEC Action come within the insuring agreements of the Policy.  The allegations in the SEC Order involve Putnam's Professional Services as defined in the Policy, and the SEC Order was served on Putnam during the Policy Period.  The SEC Order and the subsequent SEC Action constitute a covered Claim and coverage for this Claim is not otherwise excluded by the Policy.

87.     Pursuant to the terms of the Policies, ACE is obligated to pay, up to the limits of liability, for a Claim that satisfies the insuring agreements of the Policies and is not otherwise excluded from coverage.

88.     The Policy obligates ACE to pay all Defense Costs incurred in excess of the Retention, including all "reasonable and necessary costs, charges, fees and expenses incurred by [Putnam] in investigating, adjusting, defending or appealing Claims."

89.     In violation of its obligations under the terms of the Policy and despite Putnam's demand therefor, ACE has failed and refused, and continues to fail and refuse, to count the Pre-Notice Defense Costs towards the Retention.

90.      ACE has refused to properly calculate Putnam's Retention, and to reimburse Putnam for Defense Costs incurred with respect to the SEC Action, in accordance with its obligations under the Policy.

91.     As a direct and proximate result of ACE's material breach of the Policy, Putnam has suffered damages in an amount to be determined at trial, but no less than $2,000,000.

**FOURTH CLAIM FOR RELIEF**
**Violation of Massachusetts General Laws Chapter 176D and Chapter 93A By**
**Refusing to Count the Pre-Notice Defense Costs Towards the Retention**

92.     Putnam repeats and realleges the allegations set forth in paragraphs 1 through 91 of this Complaint as if fully set forth herein.

93.     At all times relevant hereto, Putnam and ACE were engaged in trade or commerce within the meaning of Massachusetts General Laws Ch. 93A.

94.     By applying the Notice Provision to Defense Costs within Putnam's Retention and relying on the Notice Provision absent any showing of actual or material prejudice in violation of the clear language of the Policy, ACE engaged in "unfair claims settlement practices" and clear violations of Massachusetts General Laws, Chapter 176D § 3(9), which thereby constitute violations of Massachusetts General Laws, Chapter 93A § 11.

95.     By refusing to consent to incurred Defense Costs, absent any attempt to determine whether the withholding of consent would be unreasonable in violation of the clear language of the Policy, ACE engaged in "unfair claims settlement practices" and clear violations of Massachusetts General Laws, Chapter 176D § 3(9), which thereby constitute violations of Massachusetts General Laws, Chapter 93A.

96.     Further evidencing ACE's unfair and deceptive trade practices, ACE's conduct constitutes willful and knowing violations of Section 3 of Massachusetts General Laws Ch. 176D, including, but not limited to:

      (a)     Misrepresenting the benefits, advantages, conditions, or terms of the Policy;

      (b)     Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

      (c)     Refusing to pay claims without conducting a reasonable investigation based upon all available information;

(d)     Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds;

(e)     Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application;

(f)     Failing to provide promptly a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

97.     In addition to the foregoing specific breaches of statutory duties set forth in M.G.L. c. 176D, ACE's tortious conduct as alleged in this Complaint and which will be proven through discovery and trial, constitutes unfair and deceptive acts and practices in the conduct of trade or commerce in violation of M.G.L. c. 93A §2 and actionable under §11.

98.     ACE's unfair and deceptive acts and practices took place and continue to take place primarily and substantially within the Commonwealth of Massachusetts, and have resulted in harm, including a loss of money and property, to Putnam.

99.     As a result of its willful, unfair and deceptive acts and practices in violation of Massachusetts General Laws Ch. 93A, Section 11, ACE is liable to Putnam for double or treble actual damages and Putnam's attorneys' fees in bringing this action.

**FIFTH CLAIM FOR RELIEF**
**Violation the Massachusetts General Laws Chapter 176D and Chapter 93A**
**by Unilaterally Imposing the Litigation Management Guidelines**

100.     Putnam repeats and realleges the allegations set forth in paragraphs 1 through 99 of this Complaint as if fully set forth herein.

101.     At all times relevant hereto, Putnam and ACE were engaged in trade or commerce within the meaning of Massachusetts General Laws Ch. 93A.

102.     The Litigation Management Guidelines conflict with the language of the Policy, were not presented to Putnam at the time of contracting, and Putnam never agreed to be bound by

their contents.  Imposing the Guidelines interfered with Putnam's contractual right to control its own defense.

103.    By unilaterally imposing the Guidelines *after* Putnam purchased the Policy and by denying coverage based on their contents, ACE engaged in "unfair claims settlement practices" and clear violations of Massachusetts General Laws, Ch. 176D §3(9), which thereby constitute violations of Massachusetts General Laws, Ch. 93A.

104.    Further evidencing ACE's unfair and deceptive trade practices, ACE's conduct with respect to the Guidelines constitutes willful and knowing violations of Section 3 of Massachusetts General Laws Ch. 176D, including, but not limited to:

(a)    Misrepresenting the benefits, advantages, conditions, or terms of the Policy;

(b)    Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

(c)    Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

(d)    Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

(e)    Refusing to pay claims without conducting a reasonable investigation based upon all available information;

(f)    Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed;

(g)    Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds;

(h)    Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application;

(i)    Failing to provide promptly a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

105.     In addition to the foregoing specific breaches of statutory duties set forth in

M.G.L. c. 176D, ACE's tortious conduct as alleged in this Complaint and which will be proven

through discovery and trial, constitutes unfair and deceptive acts and practices in the conduct of

trade or commerce in violation of M.G.L. c. 93A §2 and actionable under §11.

106.     ACE's unfair and deceptive acts and practices took place and continue to take

place primarily and substantially within the Commonwealth of Massachusetts, and have resulted

in harm, including a loss of money and property, to Putnam.

107.     As a result of its willful, unfair and deceptive acts and practices in violation of

Massachusetts General Laws Ch. 93A, Section 11, ACE is liable to Putnam for double or treble

actual damages and Putnam's attorneys' fees in bringing this action.

**SIXTH CLAIM FOR RELIEF**
**Violation of Massachusetts General Laws Chapter 176D and Chapter 93A**
**By Seeking to Leverage the Unpaid SEC Action Defense Costs to**
**Induce Putnam to Purchase the Renewal Policy**

108.     Putnam repeats and realleges the allegations set forth in paragraphs 1 through 107

of this Complaint as if fully set forth herein.

109.     At all times relevant hereto, Putnam and ACE were engaged in trade or commerce

within the meaning of Massachusetts General Laws Ch. 93A.

110.     By leveraging the unpaid SEC Action Defense Costs to induce Putnam to purchase

the Renewal Policy, ACE engaged in "unfair claims settlement practices" and clear violations of

Massachusetts General Laws, Chapter 176D § 3(9), which thereby constitute violations of

Massachusetts General Laws, Chapter 93A.

111.     Further evidencing ACE's unfair and deceptive trade practices, ACE's conduct

with respect to the Renewal Policy constitutes willful and knowing violations of Section 3 of

Massachusetts General Laws Ch. 176D, including, but not limited to:

21

(a)     Misrepresents the benefits, advantages, conditions, or terms of the Policy;

(b)      Misrepresents for the purpose of inducing or tending to induce the lapse, forfeiture, exchange, conversion, or surrender of any insurance policy;

(c)     Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

(d)      Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds;

(e)     Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application;

(f)     Engaging in misrepresentations with respect to insurance applications, including making false or fraudulent statements or representations on or relative to an application for an insurance policy, for the purpose of obtaining a fee, commission, money, or other benefit from any insurers, agent, broker, or individual.

112.    In addition to the foregoing specific breaches of statutory duties set forth in

M.G.L. c. 176D, ACE's tortious conduct as alleged in this Complaint and which will be proven

through discovery and trial, constitutes unfair and deceptive acts and practices in the conduct of

trade or commerce in violation of M.G.L. c. 93A §2 and actionable under §11.

113.    ACE's unfair and deceptive acts and practices took place and continue to take

place primarily and substantially within the Commonwealth of Massachusetts, and have resulted

in harm, including a loss of money and property, to Putnam.

114.    As a result of its willful, unfair and deceptive acts and practices in violation of

Massachusetts General Laws Ch. 93A, Section 11, ACE is liable to Putnam for double or treble

actual damages and Putnam's attorneys' fees in bringing this action.

### **PRAYER FOR RELIEF**

WHEREFORE, Putnam prays for relief as follows:

22

(a)      On the First Cause of Action, Putnam requests that the Court enter a declaratory judgment in favor of Putnam against ACE, declaring that ACE is obligated count the Pre-Notice Defense Costs towards the depletion of the Retention, and to pay Putnam, up to the applicable limits of the Policies, for all Defense Costs in excess of the retention incurred by Putnam during its defense of the SEC Action;

(b)      On the Second Cause of Action, Putnam requests that the Court enter a declaratory judgment in favor of Putnam against ACE, declaring that the Litigation Management Guidelines are not enforceable as to Putnam, that ACE may not rely on the Litigation Management Guidelines as a basis for denying coverage or otherwise refusing to pay any part of the Defense Costs incurred by Putnam during its defense of the SEC Action;

(c)      On the Third Cause of Action, Putnam requests that judgment be entered against ACE, awarding Putnam damages in an amount to be determined at trial, but not less than $2,000,000 plus consequential damages;

(d)      On the Fourth, Fifth and Sixth Causes of Action, Putnam requests that judgment be entered against ACE, awarding Putnam damages in an amount to be determined at trial, but not less than $4,000,000 plus attorneys' fees incurred in prosecuting this action;

(e)      On all Causes of Action, Putnam requests attorneys' fees, and pre- and post-judgment interest to the extent permitted by law; and

(f)      Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Putnam hereby demands a trial by jury on all issues so triable.


Dated:  August 22, 2019                    Respectfully submitted,

                                           /s/   Michael John Miguel
                                           Michael John Miguel (BBO #545942)
                                           mmiguel@mckoolsmith.com

                                           Robin L. Cohen (*pro hac vice pending*)
                                           NY Bar No.  2254019
                                           rcohen@mckoolsmith.com

                                           Chelsea Ireland (*pro hac vice pending*)
                                           NY Bar No.  5684600
                                           cireland@mckoolsmith.com

                                           MCKOOL SMITH, P.C.
                                           One Bryant Park, 47th Floor
                                           New York, New York 10036
                                           Tel: (212) 402-9400

                                           **Counsel for Plaintiff**
                                           **Putnam Investment Management, LLC**